[Civ. No. 4763. First Appellate District, Division One.—January 30, 1925.]

## FRANK FORREST, Respondent, v. HENRY FINK, Appellant.

[1] NEGLIGENCE — REAR-END AUTOMOBILE COLLISION—WARNING OF IN-TENTION TO STOP—INSTRUCTIONS.—In this action for damages for personal injuries sustained by plaintiff when a machine driven by defendant collided with the rear end of an ambulance driven by plaintiff, in view of the other instructions given it was not error to instruct the jury "that the driver of the ambulance had a legal right to operate the same on the highway in question as slowly as he desired, and that he had a legal right to diminish the speed of his automobile without giving any signal or warning of any kind to vehicles approaching from the rear of his intention to do so, provided he may do so without accident to a vehicle follow-ing, that is, if the vehicle following be not so close that to do so would be dangerous."

[2] ID. — DUTY TO GIVE SIGNAL — CONSTRUCTION OF MOTOR VEHICLE ACT.—A practical and reasonable construction of subdivision N of section 20 of the Motor Vehicle Act, which provides that one driving on the highway shall ascertain if there is sufficient space for turning, stopping, or changing his course and "if the move-ment or operation of other vehicles may reasonably be affected" thereby, he shall give plainly visible signal to the person operat-ing said car, does not require the driver of a vehicle upon every deviation from a direct course ahead to look back to ascertain the condition of traffic behind him.

[3] ID. — INJURY TO EMPLOYEE — ACTION FOR DAMAGES — NOTICE TO EMPLOYER — CONTINUANCE — JURISDICTION. — Where an employee brings an action against a third person for damages for personal injuries alleged to have been caused by the negligence of the latter, the service by said employee upon his employer of the notice prescribed by section 26 of the Workmen's Compensation Act and the filing of proof thereof in the action are not juris-

dictional, but the failure to give such notice is ground for continuance until such time as the notice is given.

[4] Id.—Denial of Continuance—Absence of Prejudice.—The error of the trial court in overruling defendant's objection to proceeding with the trial of the case until plaintiff has complied with section 26 of the Workmen's Compensation Act is one of procedure, which will not require a reversal on appeal of the judgment rendered in plaintiff's favor, unless it is shown by defendant that by the omission complained of he has suffered prejudice amounting to a miscarriage of justice.

[5] Id.—Sufficiency of Notice — Appeal—Record—Presumption.— Where the appellant in such case admits on appeal that the insurance carrier was served with some form of written notice, but such notice is not contained in the record on appeal, so as to show as appellant claims that it was totally insufficient for any purpose, the appellate court must presume, in the absence of such evidence to the contrary, that the giving of such notice was regular.

[6] Id.—Expert Testimony—Statistics.—In an action for damages for personal injuries sustained by plaintiff when a machine driven by defendant collided with the rear end of an ambulance driven by plaintiff, causing plaintiff's head to bump against the plateglass front of the ambulance and fracture his skull, it is not error to overrule defendant's objection on the ground of hearsay to the question, asked on direct examination of a medical witness called on behalf of plaintiff, "Have you made a study of the statistics relative to brain tumors, the percentage of cases of brain tumor which give a previous history of either a fracture of the skull or brain injury," where his reply was, "Yes; twenty-seven per cent of them gives a history of such injury," and he later said, "Well, of course, he may get over this. The chances are two to one from statistics that I have already quoted that he will not. He may go on the way he is now, and he may get a good deal worse."

---

(1) 38 Cyc., p. 1979, n. 75.    (2) 28 Cyc., p. 29, n. 36.    (3) Workmen's Compensation Acts, C. J., p. 141, n. 10 New.    (4) Workmen's Compensation Acts, C. J., p. 141, n. 10 New.    (5) 4 C. J., p. 736, n. 37.    (6) 22 C. J., p. 716, n. 11.

APPEAL from a judgment of the Superior Court of Alameda County. Mortimer Smith, Judge. Affirmed.

The facts are stated in the opinion of the court.

Hadsell, Sweet & Ingalls for Appellant.

Ford, Johnson & Bourquin for Respondent.

KNIGHT, J.—This is defendant's appeal from a judgment obtained by plaintiff in an action wherein plaintiff recovered damages for injuries sustained by him in a rear-end collision between a motor ambulance he was driving and an automobile driven by the defendant.

The facts are as follows: The accident occurred about 10 o'clock in the morning, September 16, 1922, while the ambulance was being driven by plaintiff along Foothill Boulevard, a short distance west of San Leandro Creek, in the county of Alameda. This boulevard is about seventy feet wide, and just east of the point of collision there is a curve in the road, which was negotiated by the ambulance at a speed estimated by various parties as between five and twenty-five miles an hour. Shortly thereafter the machine operated by defendant followed, at a speed estimated as being in excess of thirty miles an hour and by one witness as forty miles per hour. There is a conflict in the evidence regarding the circumstances which occurred immediately preceding and at the time of the accident. Defendant contends that the ambulance slowed down sharply or stopped, without giving signals of an intention to do so. Other testimony is to the effect that if there was any diminution of speed at all, it was a gradual slowing up of the ambulance before a stop. At any event the automobile driven by defendant collided with the rear end of the ambulance, causing plaintiff's head to bump against the plate-glass front of the ambulance and fracture his skull.

[1] The first contention urged by appellant is that the court erred in giving the following instruction:

"You are instructed that the driver of the ambulance had a legal right to operate the same on the highway in question as slowly as he desired, and that he had a legal right to diminish the speed of his automobile without giving any signal or warning of any kind to vehicles approaching from the rear of his intention to do so, provided he may do so without accident to a vehicle following, that is, if the vehicle following be not so close that to do so would be dangerous. The Motor Vehicle Act of this state provides that signal must be given to vehicles following in

the rear only before turning, stopping, or changing the course of the vehicle which is preceding.''

Appellant's objection to this instruction is that the jury was advised that under the circumstances stated in said instruction respondent had the right to diminish the speed of his machine without giving a signal or warning of his intention to do so. In view of the other instructions given, which must be read in connection with the one complained of, we think the jury was correctly and fully instructed upon the subject.

[2] The Motor Vehicle Act provides that one driving on the highway shall ascertain if there is sufficient space for turning, stopping, or changing his course, and ''if the movement or operation of other vehicles may reasonably be affected'' thereby, he shall give plainly visible signal to the person operating said car. ''A practical and reasonable construction of this provision [Subdivision 'N' of Section 20 of the Motor Vehicle Act (Stats. 1919, p. 216)] would not require the driver of a vehicle upon every deviation from a direct course ahead to look back to ascertain the condition of traffic behind him. This particular situation would be covered by his duty to use ordinary care, and whether or not he did so would be for the jury to decide upon the particular circumstances of the case.'' (*Noce* v. *United Railroads*, 53 Cal. App. 512 [200 Pac. 819].) This becomes doubly apparent when it is shown that the trial court instructed the jury that if plaintiff failed to comply with the Motor Vehicle Act of the state of California ''and said failure or omission so to comply contributed directly to the happening of the collision,'' the verdict should be for defendant, provided said failure or omission was the proximate cause of the accident. The jury was also instructed that it is the duty of a driver about to stop a motor vehicle or to abruptly or suddenly check its speed to extend his hand and arm as provided by law, and that a failure so to do is *prima facie* evidence of negligence when an accident results. This latter instruction, we think, covers the situation precisely, and if the instructions as a whole do not mislead the jury the verdict should remain. (*Garrette* v. *Grangers' Business Assn.*, 58 Cal. App. 396 [208 Pac. 1010].) Finally an instruction was given which, after stating a hypothetical case

upon which plaintiff might recover, contained this qualification: "If you shall also find that the plaintiff, F. Forrest, carelessly and negligently or carelessly or negligently slowed the speed of the automobile without making any sign as required by law, and that said negligence on his part proximately caused and contributed to the happening of the accident, then your verdict shall be in favor of defendant." We are of the opinion that the instructions, as a whole, embodied a correct and full exposition of the law upon the subject in controversy.

The next contention urged by appellant is that the trial court erred in overruling defendant's objection to proceeding with the trial of the case until plaintiff had complied with section 26 of the Workmen's Compensation Act (Stats. 1919, p. 920), relating to serving notice upon his employer of the pendency of the action. The section requires either an employer or employee when bringing an action for damages to notify the other by registered mail of such fact, and of the name of the court in which such suit is brought, "filing proof thereof in such action, and, if the action be brought by either, the other may, at any time before the trial on the facts, join as party plaintiff, or must consolidate his action, if brought independently." Evidently the only benefit inuring to a defendant under this statute is to prevent a duplication of action against him for the same tort. [3] The service of the notice upon the employer and the filing of proof thereof are not jurisdictional, but, as was said in *Van Zandt* v. *Sweet,* 56 Cal. App. 164 [204 Pac. 860], the failure to give such notice would be ground for continuance until such time as the notice should be given. [4] It would therefore appear in the present case that the error committed, if any there be, was one of procedure, which would not require a reversal of the judgment unless it has been shown by appellant that by the omission complained of he has suffered prejudice amounting to a miscarriage of justice. (See. 4½, art. VI, Const.; *Lutz* v. *Merchants' Nat. Bank,* 179 Cal. 401 [177 Pac. 158].) [5] In view of the state of the record before us it is apparent that no such showing has been made. In the first place, respondent claims that, before the conclusion of plaintiff's

case, proof that notice had theretofore been given the employer was filed, and from which it is claimed it appeared that the insurance carrier who was the real party in interest, so far as the effect of such notice is concerned, had actual notice of the pendency of the action and had consented to their interest being represented by plaintiff's counsel. While it is true, as appellant points out, such notice or proof of notice is not made a part of the record of the case, nevertheless appellant admits that some sort of document had been filed, but in this respect contends that the same was ineffectual, either in form or procedure, to meet the requirements of the statute. Inasmuch as appellant admits that the insurance carrier was notified by the service of some form of written notice, and in view of the fact that the notice itself is not made a part of the record before us, so as to show as appellant claims that it was totally insufficient for any purpose, we must, in the absence of such evidence to the contrary, presume that the giving of such notice has been regular. In *Hulbert* v. *All Night and Day Bank,* 29 Cal. App. 765 [157 Pac. 546], the court held that even though a contention is made that an individual should be made a party litigant was technically correct, nevertheless, under certain circumstances, the case was one to which the provisions of section 4½ of article VI of the constitution should be applied. That would seem to be a more serious fault in the conduct of the case than the one appearing in the case at bar, because here, if the appellant has any doubts as to his status in connection with the employer or the insurance carrier, he may still protect his interest by causing said notice to be served upon either or both of them any time before final judgment.

[6] Appellant's final contention is that the trial court erred in permitting a medical witness to testify as to what statistics showed concerning the result of injuries received similar to those received by plaintiff. The particular testimony to which reference is made followed a question by counsel for plaintiff as follows: "Have you made a study of the statistics relative to brain tumors, the percentage of cases of brain tumor which give a previous history of either a fracture of the skull or brain injury?" Objection was made on the ground of hearsay, which objec-

tion was overruled. His reply was: "Yes; twenty-seven per cent of them gives a history of such injury." Later the witness said: "Well, of course, he may get over this. The chances are two to one from statistics that I have already quoted that he will not. He may go on the way he is now, and he may get a good deal worse." The point is made that the doctor, instead of giving his own opinion, fortifying it by his reading, if he wished, based his entire answer upon the statistics which are admittedly hearsay. Appellant relies upon the case of *Bailey* v. *Kreutzmann,* 141 Cal. 519 [75 Pac. 104], as supporting his contention that the testimony in question constitutes ground for reversal. In that case the experts were allowed to recite instances from specific medical reports and authors which purported to *prove* certain facts. This would clearly be hearsay. Likewise it would clearly be irrelevant on direct examination to educe testimony on other particular cases, even though similar, as this would be in violation of the rule that the testimony must be confined to the point in issue. It is clear that the witness to qualify as an expert must show himself to be skilled in his business or profession, but there is no precise rule as to how that skill must be acquired. He may be an expert through knowledge derived from the study of the subject only. (2 Jones' Commentaries on Evidence [Horwitz], sec. 368.) The same author says: "The opinion of physicians and surgeons may be admitted to show the physical condition of a person . . . the effect of disease or of physical injuries upon the body or mind . . . the probably future consequences of an injury, when the consequences anticipated are such as in the ordinary course of events may be reasonably expected to happen, and are not merely speculative or possible." (Sec. 378.) An expert witness might reasonably be expected to rely, to a great extent, upon the statistics he has studied, which must be taken into consideration with his observation and experience. This, apparently, was the view taken by the court in *Healy* v. *Visalia etc. R. R. Co.,* 101 Cal. 585 [36 Pac. 125], in which the court said: "The witness was asked as an expert what would be likely to be the result of certain injuries to the brow or forehead. This question sought to obtain from him his own

opinion of these results, and the fact that he was called as an expert assumed that his opinion was based, not merely upon the empirical knowledge which he had gained through his own practice, but also that which he has acquired in the study of his profession. . . . As an expert it was competent for him to give the grounds upon which he based his opinion, as well as the opinion itself, and the fact that his opinion was based upon information derived from his reading did not make it incompetent for him to so state." In the case at bar the witness referred to "statistics," while in *Healy* v. *Visalia etc. Co. supra,* reference was made to "cases on record." We feel that the situation here is entirely different from allowing medical or scientific books to be read to the jury, or seeking to influence them by opinions or theories contained in such books. His answer must be assumed to have been a conclusion reached by him after a judicious comparison of all that he had read or learned upon the subject, and upon his opinion, as well as its source, he could be subjected to the most rigid cross-examination. (*Healy* v. *Visalia etc. R. R. Co., supra.*)

The judgment is affirmed.

Tyler, P. J., and St. Sure, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on February 27, 1925, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 30, 1925.

All the Justices concurred.